IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SSI BIG SKY LLC, d/b/a SCHNITZER-BILLINGS,<br><br>        Plaintiff,<br><br>  vs.<br><br>WILLIAM M. RUSSELL,<br><br>        Defendant/Third-Party Plaintiff,<br><br>  vs.<br><br>SCHNITZER STEEL INDUSTRIES INC., an Oregon corporation,<br><br>        Third-Party Defendant. | CV 11–49–M–DWM<br><br>ORDER |

**INTRODUCTION**

In March 2011, Plaintiff SSI Big Sky, LLC ("SSI Big Sky") filed a Complaint against Defendant William M. Russell ("Russell") alleging breach of a scrap metal contract. In January 2012, Russell filed a counter-claim, alleging SSI Big Sky in fact breached the contract by attempting to remove metals not provided

-1-

for in the agreement and ultimately failing to perform. On June 5, 2012, Russell filed a Third-Party Complaint against Schnitzer Steel Industries, Inc. ("Schnitzer") on the same grounds. (Doc. 45.) Russell now moves for partial summary judgment as to his breach of contract claims against SSI Big Sky and Schnitzer. (Doc. 56.) Although the term "material" is not ambiguous, it is not reasonably susceptible to Russell's interpretation. The motion for summary judgment is denied.

## BACKGROUND

Russell owns and operates two scrap yards in Montana, one in Columbia Falls at the "Columbia Heights" area (commonly known as Russell's Trucking & Equipment), and another yard on U.S. Highway 2 which is referred to as "10 West." (Aff. Gallup, doc. 61-1 at ¶ 13.) On January 26, 2011, Russell entered into a contract to sell "materials" from his scrap yards to SSI Big Sky/Schnitzer. (Def.'s SUF, doc. 57 at ¶¶ 1-3.) The items to be purchased under the contract are referred to therein only as "material(s)" and "equipment." (Contract, Ex. A., doc. 5-1.) The contract provided SSI Big Sky would pay Russell $215 per net ton "for all the material." (*Id.*) The materials were to be picked up by SSI Big Sky/Schnitzer after Russell had marked them with a green stripe, indicating they were ready for scrap. (Def.'s SUF, doc. 57 at ¶ 8; Aff. Gallup, doc. 61-1 at ¶ 17.)

A short time after the contract was executed, SSI Big Sky sent employees of Rosin Brothers Trucking to Russell's yard at "10 West" to begin processing scrap material. (Depo. Rosin, doc. 61-2 at 48:22-49:11.) Rosin Brothers Trucking began shearing items in the scrap yard, spending approximately three days sorting ferrous and non-ferrous material.[1] (*Id.* at 37:9-11, 39:9-16, 43:13-17.) After that time, Rosin Brothers Trucking was informed by Russell's agent and son, Austin Russell, that they were to remove only the ferrous material. (*Id.* at 21:23-22:1, 24:2-5, 43:9-12, 80:20-81:4; Aff. Gallup, doc. 61-1 at ¶ 19.) Following that exchange, Rosin Brothers Trucking and SSI Big Sky were locked out of the property to prevent further scrapping. (Depo. Russell, doc. 61-2 at 104:25-105:1.)

Russell moves for summary judgment as to Count 2 of his counterclaim, asking this Court to find that the contract term "material" refers only to ferrous material.[2] SSI Big Sky and Schnitzer contend the term "material" refers to both

---

[1] Ferrous material is defined in the scrap metal industry as "[i]ron-containing used steel which is remelted and recast into new steel by both fully integrated mills (approximately 25% mix of scrap)." (Def.'s Br. in Support, doc. 58 at 9-10.) Non-ferrous material, on the other hand, includes metals such as aluminum, copper, and lead. (Def.'s SUF, doc. 57 at ¶ 10.) Russell contends a different in value between the two types of metals, with non-ferrous materials being more valuable. (Def.'s Br. in Support, doc. 58 at 10.)

[2] It is unclear whether Russell intends to move for summary judgment as to all of his breach of contract claims. (*See* docs. 56, 58.) However, the arguments contained in his brief and reply address only the meaning of the term "material"

ferrous and non-ferrous materials.

## STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

## ANALYSIS

Both parties insist that the term "material" is not ambiguous. However, each party has interpreted the term differently based on the language of the contract. Russell contends "material" unambiguously refers to only ferrous materials as the price term of the contract matches the market price of ferrous materials ($215/net ton). SSI Big Sky and Schnitzer contend "material" refers to all metallic items in the scrap yard, excluding only those items specifically

---

and not SSI Big Sky's removal of its equipment or its alleged failure to perform. Count 2 of the Counterclaim is at issue regarding the meaning of "material." (Doc. 23.)

mentioned in the contract, such as non-metallic and hazardous materials.

In Montana, "[w]hether an ambiguity exists in a contract is a question of law." *Mary J. Baker Revocable Trust v. Cenex Harvest Sts., Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007). "If the language of the contract is unambiguous-i.e., reasonably susceptible to only one construction-the duty of the court is to apply the language as written. However, if the language of a contract is ambiguous, a factual determination must be made as to the parties' intent in entering into the contract." *Id.* (internal quotations and citations omitted). "[T]he mere fact that the parties disagree as to the interpretation of a contract does not automatically create an ambiguity." *Wurl v. Polson Sch. Dist. No. 23*, 127 P.3d 436, 442 (Mont. 2006).

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Mont. Code Ann. § 28-3-301 (2013). The mutual intention of the parties should then be ascertained from the writing, if possible. § 28-3-303. In addition, evidence of the circumstances under which the contract was made and the matter to which it relates may be considered. § 28-3-402. However, such evidence is not admissible to add to, vary, or contradict the terms of the contract. *See* § 28-2-904.

Although the term "material" is ambiguous when standing alone, it is

susceptible to only one reasonable interpretation when considered in the context of the contract.[3] The contract states in part:

> Seller will paint an obvious green strip across the equipment showing that it is ready to be scrap[p]ed. Buyer will have exclusive rights to all the materials without regard to any value assigned by seller or buyer. Seller will not sell any equipment or parts of without approval from the buyer. There are a few pieces of equipment that the seller will retain ownership of. Those pieces will be clearly identified prior to buyer removing anything.

(*See* Contract, Ex. A, doc. 5-1.) The contract makes no limitation on what that "material" may or may not include, except to say that SSI Big Sky would not take non-metallic or hazardous materials. (*Id.*)

Russell's contention that this Court should interpret "materials" based on the market price of metals is unpersuasive. First, the contract specifically states that SSI Big Sky had a right to all the materials from scrapped equipment without regard to their value. Even if this severely undercuts the market price of some of the metals involved, such is the right of freedom of contract. Russell relies on *Frigaliment Importing Co. v. B.N.S. Intl. Sales Corp.*, 190 F. Supp. 116 (S.D.N.Y. 1960) (involving a contract dispute over the meaning of the word "chickens") to argue that SSI Big Sky could not have expected Russell to incur a loss on the

---

[3] The contract itself fills less than one page, yet contains the word "material" 14 times.

contract. However, as was the case in *Frigaliment Importing Co.*, price is not necessarily dispositive, but just one factor the Court must consider. 190 F. Supp. at 121. Furthermore, as noted by SSI Big Sky and Schnitzer, the contract price included a 90-day guarantee, which provided its own value to the contract as it was better than the guarantee offered by SSI Big Sky's competitors. (*See* Statement of Disputed Facts, doc. 62 at ¶ 6; Aff. Russell, doc. 63-1 at ¶ 4.)

Second, the contract gives SSI Big Sky veto rights on any equipment *or parts* that Russell may want to sell, indicating an existing interest in those parts. Finally, the contract states that any equipment that is not to be removed would be "clearly identified" prior to SSI Big Sky scrapping anything. There is no indication that Russell identified non-ferrous component parts as not to be removed. In fact, it was not until Rosin Brothers Trucking had scrapped for a number of days that they were told ferrous and non-ferrous materials were being treated differently. (*See* Depo. Rosin, doc. 61-2 at 21:23-22:1, 24:2-5, 43:9-12, 80:20-81:4; Aff. Gallup, doc. 61-1 at ¶ 19.)

It is clear from the language of the contract that "material" means any component parts that result from the scrapping of the agreed upon equipment. A material dispute exists as to whether or not SSI Big Sky attempted to remove properly marked equipment and material.

## Conclusion

The Plaintiff's Motion for Partial Summary Judgment (doc. 56) is DENIED.

The Clerk is directed to notify the parties of the entry of this order.

Dated this 1st day of October, 2013.

```
_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT
```